Filed 4/4/24  P. v. Leija CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085023 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. F16906263) |
| MARCUS SIMON LEIJA, | OPINION |
| Defendant and Appellant. | |

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Poochigian, Acting P. J., Franson, J. and Snauffer, J.

Defendant Marcus Simon Leija contends on appeal that defense counsel rendered ineffective assistance by failing to argue at sentencing that the lower term was the presumptive term on count 3, pursuant to Penal Code[1] section 1170, subdivision (b)(6). The People disagree. We affirm.

## PROCEDURAL SUMMARY

On July 8, 2021, the Fresno County District Attorney filed a first amended information charging defendant with sodomy of a child age 10 or younger (§ 288.7, subd. (a); count 1); sexual penetration of a child age 10 or younger (§ 288.7, subd. (b); count 2); and lewd acts upon a child under the age of 14 years (§ 288, subd. (a); count 3).

On July 13, 2021, the trial court granted the prosecution's motion to dismiss count 2 due to insufficient evidence.

On July 16, 2021, the jury found defendant guilty on counts 1 and 3.

On September 9, 2022, the trial court sentenced defendant to state prison for a determinate term of six years, followed by an indeterminate term of 25 years to life.

On September 29, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

A.G. was born in October 2007. In May 2015, when she was seven years old, her father left her and her brother, Adrian, in the care of a family friend, Vanessa, for the night. Vanessa, in turn, left A.G., Adrian and her two children to spend the night at her mother's house. Defendant, Vanessa's brother, also lived at the house and was helping babysit the children. Defendant was 20 or 21 years old at the time.

That night, Vanessa's children slept on the living room couch, while A.G. and Adrian slept next to it on an air mattress on the floor. At some point during the night, A.G. discovered defendant next to her on the air mattress. He pulled A.G. on top of him. Their bellies touched, making their bodies look like a "sandwich," and he started kissing

---

[1] All statutory references are to the Penal Code unless otherwise noted.

her on the lips and putting his tongue in her mouth. She hit him, trying to get him off her. He then turned her sideways so that he was facing her back. He pulled down her pants and underwear, put his penis inside her "butt," and said, "I love you." A.G. stated defendant's penis felt long, "almost hard," and "slippery" and it "hurted bad" when he pushed it inside of her anus, feeling "[l]ike, when you get hit." She felt him "shaking" like a "tornado" or an "earthquake." After he pulled out of her, she pulled up her pants and underwear. In the morning when she woke up, the back of her butt felt "slippery" and her underwear felt "slimy." When her mother picked her up that morning, she did not tell her about the incident.

Almost a year later, on April 14, 2016, A.G. confided in her mother about what defendant had done to her that night in May 2015. Her mother contacted the police. A.G. identified defendant from a photographic lineup and in court.

On August 25, 2016, A.G. gave a recorded interview with a children's forensic interviewer, wherein she described the May 2015 incident with defendant. The interview was played at trial.

Defendant was arrested on October 12, 2016, and advised of his *Miranda*[2] rights. He was 22 years old at the time of his arrest. Defendant waived his *Miranda* rights and gave a recorded statement to Fresno Police Department Detective Michael Martin, which was played at trial. Defendant initially denied touching A.G., then stated he "kind of, touched her a little bit" and admitted rubbing her vagina. When Martin told defendant more of what A.G. said about the incident, he denied it, then admitted he "might have" penetrated her anus "a little bit." Defendant stated that what he did was wrong. Martin then told defendant that A.G. said it felt "slippery" and she felt something "sticky" during the incident. Defendant stated it was from preejaculate. He stated he was sorry.

---

**2**    *Miranda v. Arizona* (1966) 384 U.S. 436.

During the interview, defendant wrote an apology letter to A.G. and read it to Martin, stating,

> "I'm really sorry. I'm sorry I did that. I know you're not going to take my sorry. I just wanted you to know that I am sorry. I never should have put my hands on you and put my thing in you. I've changed now. I'm not the same person anymore. I have a little girl now too, and she means more to me. And, I will never put my hands like that on her like I did to you, and I'm really, I'm truly sorry I did that. I know I shouldn't have did that, and I'm really very sorry. I hope you could forgive me. I never should have did that to you. That was my mistake. It's because I was, it happened to me when I was your age, and I never told anybody. I was your age. I know I deserve this. I deserve this. I deserve to be locked up. I'm sorry."

The detective then questioned defendant:

> "[Martin]: What made you do it? …
>
> "[Defendant]: I was playing. I was playing with the little one, and I was bored.
>
> "[Martin]: Were you attracted to her or thought she was cute?
>
> "[Defendant]: Yeah. I thought she was too cute. [¶] … [¶]
>
> "[Martin]: Do you still look at younger girls that way, as being cute? Do you think you have a problem with that?
>
> "[Defendant]: Yeah."

The defense did not present any evidence.

## DISCUSSION

Defendant contends defense counsel provided ineffective assistance because she did not argue at sentencing that defendant's youth and prior childhood trauma created a statutory presumption pursuant to section 1170, subdivision (b)(6) that the trial court should select the lower term on count 3. The People disagree. We agree with the People.

4.

### A. Background

The jury found defendant guilty on counts 1 and 3. The offenses were alleged to have occurred between October 16, 2014, and October 15, 2015, when defendant was 20 or 21 years old.

On October 14, 2021, the prosecution filed a "Statement in Aggravation," arguing the following factors in aggravation applied to defendant: that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, Rule 4.421(a)(1));[3] that the victim was particularly vulnerable (rule 4.421(a)(3)); that defendant took advantage of a position of trust or confidence to commit the offense (rule 4.421(a)(11)); that defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); and that defendant stated he did so because he was " 'bored' " and because he admitted he has a problem with looking " 'at younger girls that way, as being cute,' " pursuant to rule 4.421(c).[4] The factors listed in mitigation were that defendant " 'has no prior record, or has an insignificant record of criminal conduct, considering the recency and frequency of prior crimes' " (rule 4.423(b)(1)); and that defendant voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process (rule 4.423(b)(3)).

On September 6, 2022, defense counsel filed a "Statement in Mitigation" pursuant to *People v. Franklin* (2016) 63 Cal.4th 261, for use in a future youth offender parole hearing. The *Franklin* statement focused on defendant's experience as a victim of sexual abuse as a child and included reports by a licensed psychologist. It stated defendant's youthfulness and life experiences meant his personality was not " 'fixed,' " "cognitively

---

[3] All rules references are to the California Rules of Court.

[4] Rule 4.421(c) includes "[a]ny other factors statutorily declared to be circumstances in aggravation or which reasonably relate to the defendant or the circumstances under which the crime was committed." (Rule 4.421(c).)

he was not fully developed," he suffered from intellectual disability, and that his "prefrontal cortex was unable to modulate or redirect" his urges and impulses at the time of the offenses due to his youth.

On September 9, 2022, the probation report was filed, recommending the upper term on count 3. It listed three circumstances in aggravation pursuant to rule 4.421: (1) that defendant took advantage of a position of trust or confidence to commit the offense; (2) that defendant engaged in violent conduct which indicates a serious danger to society; and (3) that defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness. The probation report found no factors in mitigation.

On September 9, 2022, the court held a combined sentencing and *Franklin* hearing. The prosecutor noted she could not argue for the upper term on count 3, referring to the recent amendments of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) to section 1170.[5] She stated,

> "[T]he laws have changed in 2022 and, therefore, I cannot ask for the aggravated 8 years [on count 3] because [defendant] did not plead to and/or I didn't do a court or jury trial on aggravated circumstances. Therefore, I will be requesting that 6 years [the middle term] on [count 3] be ran consecutive as a determinant term to the 25 to life term in [c]ount 1."

Defense counsel argued the trial court should impose the lower term on count 3, "given [defendant's] very minimal criminal history." She argued defendant was very

---

[5]     On October 8, 2021, Senate Bill 567 was signed into law. It amends the determinate sentencing law, section 1170, subdivision (b), which delineates the trial court's authority to impose one of three statutory terms of imprisonment, known as the lower, middle, or upper terms, by making the middle term the presumptive sentence for a term of imprisonment, unless certain circumstances exist. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).) Effective January 1, 2022, under the newly amended law, the trial court may impose an upper term sentence only where there are circumstances in aggravation, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or a trial court if the defendant has consented to a court trial. (*Ibid*.)

young at the time he committed the offense and was "far below the threshold of his prefrontal cortex being developed." Defense counsel also pointed out that defendant himself had been sexually abused as a child and argued,

> "[I]t is no coincidence to me that [defendant]'s own trauma brought him or influenced the decision that he made that day. And again, what occurred in this case was serious. And again, it's not being offered again as an excuse, but as an underlying reason many children are often sexually abused themselves can sometimes become or participate in that abuse. And I believe that that was a correlation in this case.… As I say it, I have no ability to argue for less than 25 to life on [c]ount 1. I am going to ask the [c]ourt given his very minimal criminal history … I will ask the [c]ourt to impose the mitigated term of … 3 years on [c]ount 2, instead of the middle term or the aggravated term. I believe the count of 25 to life [as] mandated [by c]ount 1 is more than sufficient for the one act that was committed in this case by [defendant] and mandated unfortunately under the law."

She continued,

> "[T]he *Franklin* hearing was to put a packet together of his current mental, emotional, psychological, mitigating factors essentially so that [the Department of Corrections and Rehabilitation (CDCR)] could have him closest in time as possible for the offense itself. So with that, again, I'm just going to renew my request for the mitigated term. And I will submit on those comments, Judge."

Defense counsel did not mention section 1170, subdivision (b)(6) or its lower term presumption.

The trial court stated it found two aggravating factors: that the victim was particularly vulnerable and that defendant committed a "heinous" violation of a position of trust. The court did not mention mitigating factors. It sentenced defendant to an indeterminate term of 25 years to life on count 1, and six years (the midterm), consecutive, on count 3. It stated,

> "In regards to the sentencing aspects, I'm pleased that the People acknowledge that there has been a change in the law. It's amazing we have to follow—update the law almost every day it seems like 'cause it's changing constantly. And the People are correct, this case was tried before

7.

the change in the law, which requires at least for an aggravated term to be imposed, that the People specifically plead and prove aggravating factors. That was not done because at the time of this trial it was not required to be done. But the law applies to this case, so an aggravated term under the facts that we have is out of the question. The People acknowledge that.

"I do want to say a couple of things in regards to the probation report. I do agree, and I think the People also have stated this, that the victim in this case was particularly vulnerable. I certainly agree with that. A very young girl. And I agree that the [d]efendant violated a position of trust. He was this child's babysitter. And you look at that term, baby-sitter, someone who is entrusted to ensure the safety and well-being of a young child. And frankly, one could not violate this trust in a more heinous manner than what occurred in this case. So I do agree that that is a significant aggravating factor. [¶] … [¶]

"As to [c]ount 3, once again, probation is denied. The [d]efendant is committed to the [CDCR] for the middle term of 6 years to be served consecutively. The aggregate term of incarceration is 6 years determinant followed by one consecutive indeterminate term of 25 years to life."

### B.     Law

Effective January 1, 2022, Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124) (Stats. 2021, ch. 695, § 5) amended section 1170 by adding paragraph 6 to subdivision (b), which provides, in pertinent part: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence[; or] [¶] (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6)(A), (B).) Section 1016.7 defines "youth" as "any person under 26 years of age on the date the offense was committed." (§ 1016.7.) Section 1170,

subdivision (b)(5) requires the court to "set forth on the record the facts and reasons for choosing the sentence imposed." (§ 1170, subd. (b)(5).)

A criminal defendant is constitutionally entitled to effective assistance of counsel at all stages of his criminal proceedings, including sentencing. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Cotton* (1991) 230 Cal.App.3d 1072, 1085–1087; *People v. Cropper* (1979) 89 Cal.App.3d 716, 719–720.) "[A] defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent." (*People v. Scott* (1994) 9 Cal.4th 331, 351.)

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–692 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.)

"Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' " (*People v. Henderson* (2020) 46 Cal.App.5th 533, 549.)

" ' "If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " ' " (*People v. Henderson*, *supra*, at p. 549.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 762; see *People v. Tilley* (2023) 92

Cal.App.5th 772, 778.) "A defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241, quoting *People v. Williams* (1988) 44 Cal.3d 883, 937.) " '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.… If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed.' " (*In re Champion* (2014) 58 Cal.4th 965, 1007, quoting *Strickland*, *supra*, 466 U.S. at p. 697.)

### C. Analysis

Here, despite deficient performance by defense counsel, defendant's claim of ineffective assistance fails because he has not shown prejudice.

Defendant contends defense counsel rendered prejudicially ineffective assistance by failing to argue at sentencing that defendant's youth and prior victimization created a statutory presumption that the trial court should select the lower term of imprisonment on count 3.

He first argues that defense counsel provided ineffective assistance because there could be no legitimate tactical reason for her to omit reference to section 1170, subdivision (b)(6)'s lower term presumption.

We agree with defendant that there could be no conceivable tactical reason for defense counsel to refrain from mentioning section 1170, subdivision (b)(6)'s lower term presumption based on defendant's youth and childhood trauma, and accordingly, she provided ineffective assistance.

Assembly Bill 124 limited the trial court's discretion by creating a presumption for the lower term where any of the enumerated circumstances, including defendant's youth and childhood trauma (here, sexual abuse suffered by defendant as a child), "was a contributing factor in the commission of the offense," unless "aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be

contrary to the interests of justice." (§§ 1170, subd. (b)(6)(A) & (B), 1016.7.) The statute does not mandate a presumption in favor of the lower term in every case in which the defendant was under age 26 at the time the crime was committed. Instead, the presumption applies only if the defendant's youth was "a contributing factor" in his or her commission of the offense. (§ 1170 (b)(6)(B); see also *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) In order to trigger the presumption, there must be some initial showing that the defendant's youth was a contributing factor, and only then must the record affirmatively show compliance with the statute. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991–992.) "[A]n initial showing [pursuant to section 1170, subdivision (b)(6)] has been made when the record and/or arguments are sufficient to put a trial court on notice that a defendant's youth may have been a contributing factor in commission of the underlying offense." (*Id*. at p. 994.)

Here, the record and defense counsel's arguments at sentencing were a sufficient initial showing to trigger the presumption under section 1170, subdivision (b)(6) that defendant's youth and childhood trauma contributed to his commission of the offense. (See *People v. Fredrickson*, *supra*, 90 Cal.App.5th at p. 994.) Defendant stated in his letter to A.G. that he had also been the victim of childhood sexual abuse. Defense counsel also argued in the "Statement of Mitigation"/*Franklin* statement that defendant's youth and childhood trauma influenced his decision to commit the offense. Further, she argued extensively at sentencing that the trial court should impose the lower term specifically because defendant's youth and childhood trauma were contributing factors in his commission of the offense. Accordingly, the court was on notice that defendant's youth and childhood trauma may have been contributing factors in the commission of the underlying offense, triggering the statutory presumption of section 1170, subdivision (b)(6) that the court should select the lower term of imprisonment rather than the middle or upper term.

However, defense counsel failed to mention section 1170, subdivision (b)(6) or its presumption of the lower term at sentencing.  A defendant is entitled to a sentencing decision made with the " 'informed discretion' " of the sentencing court.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  Her failure to raise the issue resulted in the trial court potentially being unaware of its limited discretion pursuant to section 1170, subdivision (b)(6).  (But see *People v. Barber* (2020) 55 Cal. App. 5th 787, 813 ["[T]o the extent the record is ambiguous, the [sentencing] court is presumed to have properly performed its official functions in the absence of evidence to the contrary.  Under that presumption, the court is presumed to have been aware of and followed the applicable law.  (Evid. Code, § 664.)"].)  As counsel's failure "to raise 'a significant and obvious issue,' … will generally be considered deficient performance," we conclude defense counsel performed deficiently by failing to raise the issue of section 1170, subdivision (b)(6) and its lower term presumption based on defendant's youth and childhood trauma.  (*In re Hampton* (2020) 48 Cal.App.5th 463, 477.)

Defendant next argues that defense counsel's omission was prejudicial.  He contends there is a reasonable chance the result would have been different because, had defense counsel brought up section 1170, subdivision (b)(6)'s lower term presumption, it would have been "difficult" for the trial court to find the aggravating circumstances outweighed the mitigating circumstances, including his youth and childhood trauma, as well as lack of a criminal record, cognitive limitations, and admission of wrongdoing.  However, the People argue that any error by defense counsel cannot be deemed prejudicial because the court was familiar with the record, defendant's age, and that he attributed his commission of the offense to his childhood trauma and age, based on defense counsel's written motion and argument at sentencing, but nonetheless determined that the middle term on count 3 was appropriate.

Counsel's deficient performance causes prejudice when there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.)

Here, as discussed above, the record shows that while defense counsel was deficient in failing to discuss section 1170, subdivision (b)(6)'s lower term presumption, the trial court was aware that defendant's youth and childhood trauma may have contributed to his commission of the offense, and defense counsel argued he should receive the lower term based on these factors. The court still imposed the middle term on count 3, stating:

> "I do agree, and I think the People also have stated this, that the victim in this case was particularly vulnerable. I certainly agree with that. A very young girl. And I agree that the [d]efendant violated a position of trust. He was this child's babysitter. And you look at that term, baby-sitter, someone who is entrusted to ensure the safety and well-being of a young child. And frankly, one could not violate this trust in a more heinous manner than what occurred in this case. So I do agree that that is a significant aggravating factor."

Based on the trial court's statement and the record, we conclude the result would not have been different, but for defense counsel's error. The court omitted discussion of mitigating factors, instead focusing on the significance of the two aggravating factors it found true, describing them as "heinous" and "significant."[6] However, given the court's

---

**6**     Generally, to the extent the record is ambiguous, the sentencing court is presumed to have properly performed its official functions in the absence of evidence to the contrary, and under that presumption, the sentencing court is presumed to have been aware of and followed the applicable law. (*People v. Barber*, *supra*, 55 Cal.App. 5th 787, 813; Evid. Code, § 664.) Here, however, the court was required by section 1170, subdivision (b)(5) to state its reasons for the sentence on the record. (§ 1170, subd. (b)(5).) As the court did not discuss mitigating factors or explicitly state the aggravating factors outweighed the mitigating factors, such that the imposition of the lower term pursuant to section 1170, subdivision (b)(6) would be contrary to justice, as required by section 1170, subdivision (b)(5), we cannot presume the court was aware of section 1170, subdivision (b)(6).

awareness of defendant's youth and childhood trauma as factors that may have contributed to defendant's commission of the offense and defense counsel's argument that the lower term should be imposed based on those factors, as well as the court's awareness of other mitigating factors under rule 4.423 in the record, including defendant's lack of an extensive prior criminal record, cognitive impairment, and early admission of wrongdoing, the court's failure to discuss the mitigating factors or whether they were outweighed by the aggravating factors does not mean the court was unaware of or disregarded those mitigating factors.  Rather, we conclude the court's focus on the significance of the aggravating factors, noting they were "heinous" and "significant," indicates the court found the aggravating factors significant enough to outweigh the mitigating factors, and that it would have imposed the middle term on count 3 even if defense counsel had argued the lower term presumption applied, pursuant to section 1170, subdivision (b)(6).  Accordingly, we conclude defense counsel's deficient performance did not result in prejudice to defendant, as there is not "a reasonable probability that, but for counsel's unprofessional errors," the court would have imposed the lower term on count 3.  (See *Strickland*, *supra*, 466 U.S. at p. 694.)

## DISPOSITION

The judgment is affirmed.